IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TIFFNEY PENLEY, *individually and
on behalf of others similarly situated,* and
ASHLEY LEWIS, *individually and
on behalf of others similarly situated*,

    Plaintiffs,

vs.                                    No. 13-1031

NPC INTERNATIONAL, INC.,

    Defendant.

**ORDER WITHDRAWING REFERRAL (D.E. 141)
& GRANTING PLAINTIFF'S MOTION FOR
CONDITIONAL CERTIFICATION (D.E. 138)**

On January 29, 2013, Plaintiffs, Tiffney Penley and Ashley Lewis, filed a complaint on behalf of themselves and others similarly situated against Defendant, NPC International, Inc. ("NPC"), alleging that NPC violated the Fair Labor Standards Act ("FLSA") by failing to compensate her and others similarly situated as required by statute. (Docket Entry ("D.E.") 1.) Before the Court is Plaintiffs' second motion for conditional certification.[1] (D.E. 138.) Defendant filed a response, (D.E. 173-1), to which Penley and Lewis filed a reply (D.E. 178).

---

[1] Plaintiffs' first motion for conditional certification, (D.E. 71), was dismissed without prejudice after NPC appealed this Court's order denying its motion to compel arbitration to the Sixth Circuit Court of Appeals (D.E. 114).

This motion was previously referred to the magistrate judge, (D.E. 141), but that referral is WITHDRAWN.

I. BACKGROUND

The procedural and factual background of this case, one of five related FLSA cases,[2] is substantial and has been thoroughly discussed by the Sixth Circuit Court of Appeals. *See Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 263 (6th Cir. 2016). Briefly, NPC owns and operates 1,260 Pizza Hut restaurants in twenty-eight states. (D.E. 173-1 at PageID 2892.) Penley and Lewis were employed by NPC as shift managers at its restaurant in Henderson, Tennessee. (D.E. 140-1 at PageID 2075.) Plaintiffs allege that Defendant violated the FLSA by requiring them and other shift managers to perform work, undergo training sessions, and attend meetings off the clock without compensation. (*Id.*)

Plaintiffs submit that decisions regarding compensation practices and other terms of employment were made by centralized management at NPC's headquarters in Overland Park, Kansas. (D.E. 1.) They contend that NPC has "a uniform policy and practice of incentivizing" general managers of its individual restaurants, as well as area managers, "to encourage, permit and/or require" employees to perform off the clock work. (*Id.*) Since it was filed, more than fifty opt-in plaintiffs have filed consents to join the lawsuit.

In support of the motion, Penley and Lewis have provided declarations from thirty-eight current and former shift managers from various Pizza Hut locations. (*See* D.E. 138-6.) They are representative of restaurants located in twelve states. (*Id.*) The statements provided echo the

---

[2] *See Harris v. NPC Int'l*, No. 13-1033 (W.D. Tenn. filed Jan. 29, 2013) ("current and former cooks"); *Gunn v. NPC Int'l*, No. 13-1035 (W.D. Tenn. filed Jan. 30, 2013) ("current and former tipped employees"); *Jowers v. NPC Int'l*, No. 13-1036 (W.D. Tenn. filed Jan. 30, 2013) ("current and former delivery drivers"); and *Redmond v. NPC Int'l*, No. 13-1037 (W.D. Tenn. filed Jan. 30, 2013) ("current and former customer service representatives").

allegations set forth by Plaintiffs in the complaint. Generally, these declarants allege that they were required to work off the clock and attend mandatory training sessions and meetings off the clock without compensation. Declarants aver that management directed them to perform this off-the-clock work as a means to lower Defendant's labor costs to acceptable corporate levels. (*Id.*)

In the instant motion, Plaintiffs seek certification of a collective action and request that NPC produce the names of and send notice to all current and former shift managers who were subjected to Defendant's alleged illegal policies at any time during the previous three years.[3] (D.E. 138-1.) NPC strenuously objects to conditional certification. Defendant avers that Plaintiffs have not demonstrated that a similarly situated class of shift managers exists and maintains that restaurant general managers are responsible for the violations asserted because NPC's company-wide policies comply with the FLSA. (D.E. 173-1 at PageID 2891.)

## II. LEGAL STANDARD

Penley and Lewis seek to pursue this FLSA suit as a collective action. Section 216(b) of the FLSA provides in pertinent part:

> An action [under § 206] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Collective actions under the FLSA require putative class members to opt in to the class. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009). Also, in

---

[3] Plaintiffs also request that this Court equitably toll the statute of limitations for opt-ins who filed consents to join after Defendant's motion to compel arbitration. However, this Court resolved that issue in an order dated June 29, 2016. (D.E. 170.)

contrast to Federal Rule of Civil Procedure 23 class actions, an FLSA collective action is not subject to the traditional numerosity, commonality, typicality, and representativeness requirements. *Whalen v. United States*, 85 Fed. Cl. 380, 383 (Fed. Cl. 2009).

In *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), the United States Supreme Court "made it clear that the collective action provisions of the FLSA authorize[] a trial court to issue court-supervised notice to potential class members." *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 250-51 (M.D. Tenn. 1996) (internal citation omitted). Court-supervised notice is appropriate where lead plaintiffs demonstrate that they are "similarly situated" to employees in the class they seek to certify. 29 U.S.C. § 216(b); *O'Brien,* 575 F.3d at 583. Courts typically engage in a two-phase inquiry to determine whether the lead plaintiff has satisfied that showing. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). "The first takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Id.* (internal quotation omitted). The present case is at the first phase of the collective action where the Court must determine whether to "conditionally" certify the proposed class. *See id.*

Although the FLSA does not define the meaning of "similarly situated," the Sixth Circuit's *O'Brien* decision offered clarification of that term. Despite declining "to create comprehensive criteria for informing the similarly-situated analysis," the *O'Brien* court did state "that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." 575 F.3d at 585. "Showing a 'unified policy' of violations is not required, though." *Id.* at 584 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095 (11th Cir. 1996)).

4

Plaintiffs may also be similarly situated where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* at 585. Under the circumstances of *O'Brien*, "[t]he claims were unified so, because plaintiffs articulated two common means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets." *Id.*

The parties disagree as to which standard this Court should apply to evaluate whether members of the putative class are similarly situated to Penley and Lewis. Plaintiffs contend that the traditional "modest" standard is appropriate, while Defendant urges the Court to apply a more stringent "modest plus" standard.

Under the traditional standard, a plaintiff's burden at this stage is "fairly lenient," and the lead plaintiff must make only a "modest factual showing" that she is similarly situated to members of the prospective class she seeks to certify and send court-supervised notice. *Comer*, 454 F.3d at 547 (quoting *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000), and *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002)). Because of the lenient standard, district courts typically grant conditional certification of collective actions. *Id.* Thus,

> [s]everal courts have recognized that the named plaintiff's burden at this stage is not a heavy one. *White v. MPW Indus. Servs.*, 236 F.R.D. 363, 367 (E.D. Tenn. 2006); *Swallows v. City of Brentwood, Tenn.*, 2007 U.S. Dist. LEXIS 61130, 2007 WL 2402735, at *2 (M.D. Tenn. Aug. 20, 2007). "[T]he burden of proof is relatively slight at this stage of the case because the Court is not making a substantive determination on the basis of all the evidence but simply adopting a procedure which permits notice to be given to other potential class members." *McDonald v. Madison Township Bd. of Township Trustees*, 2007 U.S. Dist. LEXIS 76450, at *6 (S.D. Ohio Oct. 5, 2007). At the notice stage, the plaintiff must show that "his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)).

5

*Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708, 2008 WL 6653632, at *4 (W.D. Tenn. Sept. 16, 2008) (footnote omitted).

In contrast to this lenient standard, some courts apply a slightly elevated "modest plus" standard where discovery has been conducted during the pre-certification stage. In conducting an analysis under this standard,

> th[e] Court will compare Plaintiffs' allegations set forth in their Complaint with the factual record assembled through discovery . . . to determine whether Plaintiffs have made [a] sufficient showing beyond their original allegations that would tend to make it more likely that a class of similarly situated employees exist. In other words, the Court will review whether Plaintiffs have advanced the ball down the field—showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs.

*Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 827 (N.D. Ohio 2011).

In this case, however, Defendant acknowledges that Plaintiffs sought and received a protective order authorizing them not to respond to discovery. Even so, NPC claims "the more stringent 'modest plus' standard should still apply because much time that [sic] passed between when Plaintiffs filed the lawsuit and ultimately moved for conditional certification and NPC attempted to engage in discovery." (D.E. 173-1 at PageID 2900 n.5.) This argument is inapt given the rationale courts have provided when employing the modest plus standard. *See, e.g.*, *Potts v. Nashville Limo & Transp., LLC*, No. 3:14-cv-1412, 2015 WL 4198793, at *5 (M.D. Tenn. July 10, 2015) (stating that when at least some discovery has taken place, "[i]t seems sensible for a court at least to consider additional information following limited discovery, and courts can evaluate the weight to assign to that information on a case-by-case basis"). In this case, discovery has not taken place; thus, there is no additional information to consider. Moreover, Defendant's argument regarding the age of this matter is dubious given that it has been largely responsible for the case's slow progression. *See Gunn v. NPC Intern., Inc.*, 625 F.

App'x 261, 265 (6th Cir. 2015) (agreeing with this Court's earlier conclusion that Defendant had employed dilatory tactics); *see also* (D.E. 170 at PageID 2872) ("The Defendant's actions have delayed this case such that the Court now considers the motion for equitable tolling over three years after the initial filing."). Accordingly, the Court finds that the modest plus standard is not appropriate for this case, and the more lenient standard applies.

III. ANALYSIS

Penley and Lewis ask this Court to conditionally certify a nationwide collective action based on Defendant's "common plan, policy and practice" of requiring shift managers to perform work, attend meetings, and undergo training off the clock. (D.E. 138-1 at PageID 1824.) Defendant maintains that conditional certification is inappropriate for a variety of reasons. Alternatively, NPC asks that, if the Court does conditionally certify a class, it be limited to the Memphis and Nashville Regions, where between fifty-two and sixty eight percent of individuals who have already opted in were employed. Finally, assuming conditional certification is granted, Defendant has filed a separate document objecting to Plaintiffs' proposed notice.

    A.  <u>Defendant's Objections to Conditional Certification</u>

    1. NPC's company-wide policies

First, Defendant insists that its company-wide policies comply with the FLSA. NPC insists that the allegations in the complaint and declarations differ from the company's stated policies and procedures. Additionally, Defendant claims that employees are responsible for ensuring they are paid correctly and that they are required to review their paychecks and inform a manager of any discrepancies. Finally, NPC contends that Plaintiffs have not demonstrated a unified policy or practice that violated the FLSA.

7

Penley and Lewis theorize that NPC's centralized management incentivizes local managers to disregard its written, FLSA-compliant policies with a goal of reducing labor costs. Therefore, considering Defendant's policies would require a substantive analysis of Plaintiffs' allegations, which is inappropriate at this stage. *See Hamric v. True North Holdings, Inc.*, No. 1:16-cv-01216, 2016 WL 3912482, at *2 (N.D. Ohio July 20, 2016) (noting that defendant could not defeat certification "merely by pointing to a written policy" that complied with the FLSA); *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 759-60 (W.D. Tenn. 2011) (conditionally certifying class where plaintiffs asserted that defendant routinely ignored FLSA-compliant written policy on automatic meal-break deductions); *see also Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 408 (S.D.N.Y. 2012) (rejecting defendant's reliance on its written policy requiring payment for overtime where plaintiffs presented evidence that the policy was violated in practice); *Burkhart-Deal v. Citifinancial, Inc.*, No. 07-1747, 2010 WL 457127, at *3 (W.D. Pa. Feb. 4, 2010) (noting that defendant's arguments that its policies complied with the FLSA "skirt[ed] the merits" of plaintiff's claim, making them inappropriate to consider at conditional certification stage). At this stage, the Court is tasked only with evaluating whether Plaintiffs have alleged an FLSA-violating policy and shown that members of the putative class are similarly situated with respect to these violations. *See O'Brien*, 575 F.3d at 585.

Likewise, Defendant's arguments that employees were responsible for reporting violations of company policy to general managers miss the mark. "The law is clear that it is the employer's responsibility, not its employees', to ensure compensation for work 'suffered or permitted.'" *Camesi v. Univ. of Pittsburgh Med. Ctr.*, Civil Action No. 09-85J, 2009 WL 1361265, at *4 (W.D. Pa. May 14, 2009), *recons. denied* (June 10, 2009).

Defendant also maintains that the declarants' "conclusory, isolated and piecemeal allegations" fail to show a unified policy of labor violations. (D.E. 173-1 at PageID 2905.) According to NPC, "despite many months of opportunity to conduct discovery, Plaintiffs have failed to provide any factual evidence of a 'policy of violations' . . . ." (*Id.* at PageID 2906.) This position is puzzling given that Defendant admitted elsewhere in its response that discovery did not actually take place because Plaintiffs obtained a protective order. (*See id.* at PageID 2900 n.5.) Furthermore, the *O'Brien* Court was careful to note that it did "not mean to require that all collective actions under § 216(b) be unified by common theories of defendants' statutory violations . . . ." *O'Brien*, 575 F.3d at 585. In other words, although showing a unified policy that violates the FLSA is one way to prove members of the putative class are similarly situated, it is not the only way. The Sixth Circuit recently reaffirmed *O'Brien*'s conclusion in this respect, stating that "employees who 'suffer from a single, FLSA-violating policy' *or* whose 'claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct,' are similarly situated." *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1009 (6th Cir. 2016) (emphasis added) (alteration in original) (quoting *O'Brien*, 575 F.3d at 584-85).

2. Declarations in support of Penley and Lewis's motion

Next, NPC asserts that Plaintiffs have not met their evidentiary burden to justify certification. Defendant characterizes the declarations filed as conclusory and "cookie-cutter." (D.E. 173-1 at PageID 2908.) NPC states that although fifty-six opt-in plaintiffs filed consents to join, only forty-two filed declarations. Defendant has cited no authority that would require Penley and Lewis to file a declaration from each opt-in plaintiff at the conditional certification

9

stage. The declarations that were filed make allegations similar to those made by Plaintiffs. Defendant says that these statements are generic and without factual support or evidence. The Court disagrees. The declarations relate the experiences of other shift managers at Pizza Hut locations in twelve states. For example, Nathan Holton stated that he "worked off the clock without pay at the direction, encouragement, and expectation of [his] general manager in order to help management reduce NPC's labor costs to acceptable corporate levels." (D.E. 138-6 at PageID 1865.) Julie Mugge averred that "management required [her] to undergo mandatory job training off the clock without pay as a means to reduce NPC's labor costs to acceptable corporate levels." (*Id.* at PageID 1869.) According to Shawna Morris, she was required to work off the clock without compensation and "to attend mandatory meetings off the clock without pay . . . ." (*Id.* at PageID 1875.) The remaining declarations mirror these statements.

Defendant contends that these statements are inadequate because the declarants should have indicated how much time they spent working or attending meetings and training sessions off the clock. However, that level of detail is not necessary at this initial stage. *See Monroe v. FTS USA, LLC*, 257 F.R.D. 634, 639 (W.D. Tenn. 2009) (rejecting similar argument and pointing out that imposing more stringent evidentiary standards at conditional certification stage would "defeat the purpose of the two-stage analysis"); *McNelley v. ALDI, Inc.*, No. 1:09 CV 1868, 2009 WL 7630236, at *4 (N.D. Ohio Nov. 17, 2009) (rejecting similar argument and stating that "potential opt-in plaintiffs are not required to make a lengthy detailed declaration in their own words or without the assistance of counsel"). Additionally, NPC takes issue with the "identical" allegations "from declaration to declaration." (D.E. 173-1 at PageID 2909.) But, this "point cuts both ways: the fact that the [declarants] have had identical experiences as [shift

managers] . . . strongly supports a finding that the [employees] are substantially similar to each other." *Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558, 564 (M.D. Tenn. 2014). According to Defendant, conditional certification is also inappropriate because the declarations filed demonstrate that claims contained therein are "disparate." (D.E. 173-1 at PageID 2910.) NPC made a chart to point out differences in the declarations and asserts that these differences show the proposed class is not similarly situated. However, at the conditional certification stage, identical claims are not required. *See Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1073 (M.D. Tenn. 2015) (certifying class of servers where declarations contained similar factual allegations even though not every declarant included the exact same claims as plaintiffs).

Defendant further argues that some of the individuals who have opted in to this lawsuit "held different positions and worked under different pay arrangements," thus, their claims are "divergent." (D.E. 173-1 at PageID 2911.) For instance, NPC states that some individuals held positions as cooks, drivers, servers, and customer service representatives. (*Id.* at PageID 2912.) This argument is unconvincing. None of the individuals who have opted in are seeking to redress wage violations in this lawsuit that occurred while they were employed in other positions with NPC. In this case, all of the individuals who filed declarations claim that they suffered FLSA violations while employed as shift managers. The fact that they might have worked in other positions is immaterial at this time. *See Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 WL 5725631, at *4 (N.D. Ohio June 9, 2008) ("Generally, courts have left assessment of disparate factual and employment settings of individual class members to the second stage of the analysis."). In sum, these arguments are better suited for the decertification stage.

3. Conflicts of interest among class members

Next, Defendant objects that Penley and Lewis are not similarly situated to members of the putative class because they have a conflict of interest with some of the proposed class members. This, NPC avers, creates "intra-class tension and [a] conflict of interest" which weighs against conditional certification. (D.E. 173-1 at PageID 2913.) Defendant says that three of the opt-in plaintiffs "*may have* worked as Cooks, Drivers, Servers, or Customer Service Representatives at the same restaurants where other members of the putative class worked as Shift Managers at the same time." (*Id.*) (emphasis added). NPC also reasons that "[d]eclarants' reliance on the term 'management' indicates that, as the lowest level of management on-site at the restaurant, they may have contributed to their fellow purported class members in other cases' alleged failure to receive proper wages under the FLSA." (*Id.*)

NPC's argument in this respect appears to be based solely on conjecture. Defendant assumes, without pointing to any evidence, that use of the word "management" necessarily includes shift managers. However, although several declarations specifically referred to general managers, none of the declarants attributed the FLSA violations to shift managers. Also, Defendant has provided nothing more than its unsupported belief that some of the opt-ins "may have" worked as cooks, drivers, servers, or customer service representatives at the same restaurants during the same time as other shift managers who have opted in. If NPC finds evidentiary support for this in the course of discovery and believes that decertification is proper on that ground, it is free to raise the issue at the appropriate time. However, these unsupported allegations do not provide a basis for denying conditional certification.

12

B. Whether Members of the Putative Class are Similarly Situated

Having considered NPC's objections to Plaintiffs' motion, the Court now turns to address the ultimate issue: whether Penley and Lewis have demonstrated that there is a class of shift managers who are similarly situated. In their complaint, Plaintiffs theorized that NPC had a policy and practice of incentivizing general managers to implement FLSA-violating policies as a means to lower labor costs. As an exhibit to the instant motion, Penley and Lewis included declarations detailing their claims against Defendant. Penley averred that she worked as a shift manager at a Pizza Hut restaurant in Henderson, Tennessee. According to her, the work she performed was the same work that shift managers at other locations performed. She stated that she worked off the clock without pay at the direction, encouragement, and expectation of her general manager. She said that she was required to attend mandatory monthly meetings without being clocked in. Penley asserted that management also required her to undergo mandatory job training off the clock. According to her, these practices were a means to reduce labor costs to acceptable corporate levels. Lewis also worked at the Henderson, Tennessee location, and her declaration asserted essentially the same claims. She averred that she performed job duties off the clock and attended mandatory meetings and job training without compensation at the direction of her general manager. Like Penley, she stated that the goal of requiring her to perform off-the-clock work was reducing labor costs.

In further support of their motion, Penley and Lewis included declarations from thirty-eight current and former NPC shift managers who allege similar violations. These declarants assert that they were required to perform work, attend mandatory meetings, and/or complete

13

training sessions off the clock and without compensation. Each declaration alleges some or all of these violations and attributes them to a corporate goal of reducing labor costs.

Overall, Plaintiffs' evidence amounts to a "modest factual showing" that NPC implemented a common policy or practice that violated the FLSA and that they are similarly situated to shift managers at other Pizza Hut restaurants. The fact that numerous shift managers from restaurants located in multiple locations made similar allegations tends to show that these violations were not the result of "rogue managers" but rather were the result of centralized decision-making. Further, although the declarations are not identical, the claims therein rely upon "common theories of [NPC's] statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585; *see also Murton*, 2008 WL 5725631, at *4 (noting that many courts will deny certification "only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice") (citing cases). Thus, the Court concludes that conditional certification is appropriate.

C. Scope of the Class

Finally, Defendant insists that, if this Court grants conditional certification, the class should be limited to the Tennessee and Memphis regions, where between fifty-three and sixty-two percent[4] of the opt-in plaintiffs were employed. In support, NPC cites *Roberts v. Corr. Corp. of Am.*, No. 3:14-CV-2009, 2015 WL 3905088, at *14 (M.D. Tenn. June 25, 2015) and *Tyler v. Taco Bell Corp. & Taco Bell of Am., LLC*, No. 2:15-cv-02084-JPM-cgc, 2016 WL

---

[4] Defendant's response is inconsistent in this respect, stating in several instances that fifty-three percent of NPC-employed opt-in plaintiffs work in the Memphis and Nashville regions, *see* (D.E. 173-1 at PageID 2892, 2915 & 2919), and at another point reporting that number to be sixty-two percent, (D.E. 173-1 at PageID 2903).

2344229 (W.D. Tenn. May 3, 2016). Defendant argues that, as was true in *Roberts* and *Tyler*, the record in the present case is "devoid of evidence of practices beyond the location where the named Plaintiff[s] worked." (D.E. 173-1 at PageID 2916.)

In *Roberts*, the district court denied conditional certification where *no* opt-in plaintiffs had worked in facilities outside Tennessee. 2015 WL 3905088, at *11-12. The only evidence in *Roberts* that plaintiff's complaints were part of a nationwide policy was a declaration from an employee in Mississippi, who was not an opt-in plaintiff in the Tennessee case but was instead a participant in a similar case in Mississippi. *Id.* at *12. Likewise, in *Tyler*, the plaintiff "presented *no evidence* that any other [assistant general manager] at a corporate-owned Taco Bell restaurant" was similarly situated within the meaning of the FLSA. 2016 WL 2344229, at *5 (emphasis added). In contrast, Penley and Lewis have presented declarations from thirty-eight shift managers in twelve states, all alleging violations of the FLSA similar to those made by Plaintiffs. (D.E. 138-6.) Also, by NPC's own admission, at least thirty-eight and up to forty-seven percent of the opt-in plaintiffs *do not* come from the Memphis or Nashville regions. Accordingly, NPC's argument that conditional certification should be limited to those two regions is unconvincing.

Whether nationwide certification is appropriate is a closer call, and NPC's organizational structure complicates the Court's analysis in this respect. According to NPC, it operates 1,260 restaurants in twenty-eight states, which are divided into three territories: East, West, and South. Each of these territories is then divided into regions.[5] Due to this divisional structure, some

---

[5] There are five regions in the East (Memphis, Nashville, St. Louis, Virginia, and Winston-Salem), six regions in the West (Ozark, Rocky Mountain, Northwest, Midwest, Dakotas, and Iowa), and six regions in the South (Little Rock, Georgia, Tallahassee, Mobile, South Florida, and Birmingham). (D.E. 173-1 at PageID 2893-94.)

15

individual states have areas that fall into different territories and regions. For example, the East Territory includes the Nashville region, which encompasses locations in Huntsville, Alabama. However, one of the South Territory's regions is Birmingham, Alabama.[6] Therefore, although declarations have been submitted by employees from twelve states, they are actually representative of more than one territory and numerous regions.[7]

Consequently, Plaintiffs have met their modest burden in demonstrating that the practices they allege violate the FLSA are not limited to one particular territory or region but are widespread and systemic. In other words, they have shown that there are likely other similarly-situated shift managers at NPC-operated Pizza Hut restaurants across the country. Accordingly, the Court concludes that Penley and Lewis have made a sufficient showing that nationwide certification would serve the interests of justice and economy. *See Bradford*, 137 F. Supp. 3d at 1078-79 (certifying nationwide class and noting that the FLSA's "broad remedial purpose" did not require a showing that employees from every restaurant in each state where defendant operated had opted in to the lawsuit at conditional certification stage); *Smith v. Pizza Hut, Inc.*, No. 09-cv-01632-CMA-BNB, 2012 WL 1414325, at *6 (D. Colo. Apr. 21, 2012) (rejecting defendant's request to limit class geographically where only six of forty-two regions were represented at time of conditional certification because "[t]he fact that [employees] from every region have not yet opted into [the] action does not mean that a nationwide class cannot exist").

---

[6] For further example, East Arkansas is part of the Memphis region within the East Territory. However, there is a "Little Rock" region in the South Territory.

[7] Without more detailed information regarding regions and store locations, the Court cannot determine the exact number of territories and regions represented at this time. However, by comparing NPC's description of its organizational structure to the addresses provided by Declarants, it appears that employees from at least two territories and multiple regions allege similar FLSA violations.

D. NPC's Objections to Plaintiffs' Proposed Notice

Defendant also objects to Penley and Lewis's proposed notice. NPC asks that the Court direct the parties to confer and file an agreed-upon notice with the Court. Alternatively, Defendant lodges specific objections to Plaintiffs' proposed notice and requests that the Court amend the notice accordingly. The Court agrees that the parties should meet to discuss and draft a mutually acceptable notice. However, in an effort to facilitate that process, the Court will address some of NPC's objections to the proposed notice.

Defendant avers that the proposed one-hundred-twenty day-period for returning opt-in forms is too long, and argues in favor of a forty-five day-period instead. Other district courts in this Circuit facing similar objections have shortened the requested period. *See Knispel v. Chrysler Group LLC*, No. 11-11886, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21, 2012) (shortening period from ninety to forty-five days at defendant's request); *Miller v. Jackson, Tenn. Hosp. Co., LLC*, No. 3:10-1078, 2011 WL 2197694, at *3 (M.D. Tenn. June 6, 2011) ("splitting the difference" and setting a period of seventy-five days, where plaintiff proposed ninety and defendant sixty). These decisions appear to have been fairly arbitrary and made with little or no analysis, with the *Knispel* court noting only that the forty-five day period suggested by the defendant was sufficient "especially considering the statute of limitations concerns raised by [p]laintiff's counsel," despite plaintiff's position favoring the longer period. *Knispel*, 2012 WL 553722, at *8. Considering the age of the present case, the Court concludes that the opt-in period should be sixty days. That should allow ample time for interested individuals to join the lawsuit while also moving the case forward. The sixty-day opt-in period shall begin to run upon receipt of the opt-in plaintiffs' contact information, as provided below.

17

NPC further objects to some of the proposed means of providing notice, as well as Plaintiffs' request for employees' personal information, as unnecessary and unduly burdensome. Mailing of notice to putative class members at Penley and Lewis's expense should, in its view, be sufficient. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *D'Antuono v. C&G of Groton, Inc.*, No. 3:11cv33 (MRK), 2011 WL 5878045, at *6 (D. Conn. Nov. 23, 2011); *Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011). Thus, Plaintiffs' request for this type of notice appears reasonable and is granted. However, the Court finds the additional requirement of attaching notice to employees' paychecks to be duplicative and, therefore, an unnecessary expense to impose on Defendant. *See Calderon v. Geico Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011) (finding no reason to impose upon defendant costs associated with providing what would be largely duplicative notice to potential opt-in plaintiffs in the form of paycheck attachments).

As to the production of employee telephone numbers, the Court notes that "[t]his type of discovery request is routinely granted in collective actions." *Dallas v. Alcatel-Lucent, USA, Inc.*, No. 09-14596, 2012 WL 424878, at *8 (E.D. Mich. Feb. 9, 2012); *see also Miller v. Jackson, Tenn. Hosp. Co.,LLC*, No. 3:10-1078, 2011 WL 1060737, at *8 (M.D. Tenn. Mar. 21, 2011) (finding nothing "alarming" about plaintiff's request for employee telephone numbers). However, the production of social security numbers, last known email addresses, and dates of employment are not warranted at this juncture. *See Motley v. W.M. Barr & Co.,* No. 12-cv-2447 JDB/tmp, 2013 WL 1966444, at *9 (W.D. Tenn. Mar. 7, 2013), *report and recommendation*

*adopted in part, rejected in part*, No. 1:12-cv-02447-JDB-egb, 2013 WL 1966442 (W.D. Tenn. May 10, 2013).

Therefore, notification to putative class members will be by mail at Plaintiffs' expense, and Defendant will post notice in conspicuous places at its restaurants. The employer will not be required to attach notice to employees' paychecks. To facilitate notification by mail, Defendant will also provide a list of names, last known addresses, and last known telephone numbers for all present and former shift managers of NPC within the last three years. The deadlines for providing names and posting notice will be determined after the parties submit the agreed-upon notice.

Finally, the Defendant takes issue with Plaintiffs' request that consent forms be deemed filed on the date they are postmarked. NPC has cited one case from a district court in the Fifth Circuit in support of this objection, *see Diaz v. Applied Mach. Corp.*, Civil Action Nos. H-14-1282 & H-15-2674, 2016 WL 3568087, at *12 (S.D. Tex. June 24, 2016), but courts in other FLSA collective cases in this Circuit have permitted such filing. *See Parr v. Hico Concrete, Inc.*, No. 3:10-1091, 2011 WL 5512239, at *2 (M.D. Tenn. Nov. 10, 2011); *Snide*, 2011 WL 5434016, at *8. Consequently, the Court finds the Defendant's objection unpersuasive.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for conditional certification is GRANTED. The parties are hereby DIRECTED to confer and file a mutually acceptable notice in accordance with this Court's order within fourteen days of its entry.

IT IS SO ORDERED this 13th day of December 2016.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE